IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Eric A. Addison, | ) | C/A No. 3:12-420-JFA-PJG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| CMH Homes, Inc., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Plaintiff Eric A. Addison ("Addison") filed this employment action alleging race and gender

discrimination and retaliation pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42

U.S.C. §§ 2000e, et seq., as well as raising state law claims of wrongful termination in violation of

public policy, breach of employment agreement, and negligence/gross negligence against Defendant

CMH Homes, Inc. ("CMH").  This matter is before the court pursuant to 28 U.S.C. § 636(b) and

Local Civil Rule 73.02(B)(2) DSC for a Report and Recommendation on the parties' cross motions

for summary judgment.  (ECF Nos. 73 & 74.)  Both parties filed responses (ECF Nos. 78 & 79) and

replies (ECF Nos. 82 & 84).  Additionally, the defendant filed a supplemental declaration (ECF No.

96)—to which Addison objected (ECF No. 97)[1]—as well as supplemental case law (ECF No. 99).

Having reviewed the parties' submissions and the applicable law, the court finds that the defendant's

---

[1] Addison objects to the defendant's supplemental declaration on the basis that it is untimely and that the Declaration of Michelle Jaco was not timely provided in defendant's discovery responses to Addison.  (ECF No. 97 at 1.)  The defendant notes that Jaco was identified by Addison in his response to the defendant's interrogatories as a witness to the activities where Addison worked until his termination but neither Addison nor the defendant was able to contact Jaco until January of 2014.  (Def.'s Supp. to Summ. J. Briefing at 1, 4, ECF No. 96 at 1,4 ; see also ECF No. 74-4 at 5.)  The court therefore finds that her Declaration should be considered and Addison's objection is overruled.

motion for summary judgment should be granted (ECF No. 73) and Addison's motion for summary judgment should be denied (ECF No. 74).

## BACKGROUND

The following facts are either undisputed or are viewed in the light most favorable to the non-moving party, to the extent they find support in the record.  (See generally, 2d Am. Compl. at 3-6, ECF No. 68 at 3-6; Pl.'s Mot. Summ. J. at 2-6, ECF No. 74 at 2.)  Addison was employed as a sales professional by the defendant, which manufactures, sells, and finances manufactured and modular homes, from 1998 until Addison's termination on or about April 1, 2010.  During his employment, Addison was the only African American employed by the defendant at the Lexington, South Carolina location ("Lexington lot").  In 2007, Addison joined the CMH Circle Hall of Fame by exceeding expectations and maintaining an exemplary level of commitment to the company.  Darlene Lambert, a white female, worked at the Lexington lot as a sales representative.[2]  Addison was the sales manager at that time and responsible for training sales representatives.  Stan White, General Manger of the Lexington lot, was  responsible for employee training, supervision, evaluation, and discipline.  Lambert on several occasions referred to Addison as "nigger," or commented that "a brother should not be a sales manager," "this ain't the hood," and "this ain't Big E Homes."

On June 13, 2009, Addison submitted a letter to White concerning a disagreement between Addison and Lambert earlier that day.  The letter complained of Lambert's berating Addison in front of customers, taunting and yelling at Addison, and threatening to file a sexual harassment complaint against him.  Addison requested a response to the letter and White forwarded it to Robert Myers,

---

[2] Addison alleges that Lambert transferred to the Lexington lot in January of 2009; however, Lambert and White state that Lambert was transferred on March 10, 2008.  (White Decl. at 6, ECF No. 73-2 at 6; Lambert Decl. at 2, ECF No. 73-3 at 2.)



Regional Manager.  The defendants did not respond to Addison's complaints or take any corrective action regarding the letter.  Negative conditions between Lambert and Addison continued, prompting him to discuss a transfer to a different CMH location with White, Bobby Alberts, and David Booth in January of 2010.  The General Manager of another CMH lot, Mike Higgins, indicated a willingness to accept Addison's transfer; however, Booth refused to approve relocation costs associated with the move.

In March of 2010, Lambert made allegations against Addison that he was sexually harassing her, and Regional Manager Vincent Massarelli visited the Lexington lot on March 31, 2010 to investigate Lambert's claims.  Massarelli asked Addison to leave the lot and then questioned other employees.  When Addison returned, he was informed by Massarelli that he, Booth, and Alberts had decided to terminate Addison's employment.  On June 29, 2010, Addison filed a charge of discrimination based on sex and race.  (ECF No. 68-1 at 2.)  Addison's discrimination charge also alleged retaliation and racial harassment.  (Id.)  After receiving a right-to-sue letter (ECF No. 68-2), Addison filed this action.

## DISCUSSION

### A.     Summary Judgment Standard

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).  "[T]he mere existence of *some* alleged



factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* [dispute] of *material fact*." <u>Ballinger v. N.C. Agric. Extension Serv.</u>, 815 F.2d 1001, 1005 (4th Cir. 1987) (emphasis in original) (internal quotation marks and citation omitted). A fact is "material" if proof of its existence or non-existence would affect the disposition of the case under the applicable law. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248-49 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. <u>Id.</u> at 257.

In discrimination cases, a party is entitled to summary judgment if no reasonable jury could rule in the non-moving party's favor. <u>Dennis v. Columbia Colleton Med. Ctr., Inc.</u>, 290 F.3d 639, 645 (4th Cir. 2002). The court cannot make credibility determinations or weigh the evidence, but the court should examine uncontradicted and unimpeached evidence offered by the moving party. <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 150 (2000). The court must determine whether a party's offered evidence is legally sufficient to support a finding of discrimination and look at the strength of a party's case on its own terms. <u>See id.</u> at 148 (stating that "[c]ertainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational fact-finder could conclude that the action was discriminatory").

**B.     Direct Evidence and Burden Shifting Framework in Employment Cases**

A plaintiff asserting a claim of unlawful employment discrimination may proceed through two avenues of proof. First, he may establish his claims through direct evidence of the alleged discrimination. <u>See</u> <u>Hill v. Lockheed Martin Logistics Mgmt., Inc.</u>, 354 F.3d 277, 284-85 (4th Cir. 2004) (*en banc*). Such proof includes "evidence of conduct or statements that both reflect directly



the alleged discriminatory attitude and that bear directly on the contested employment decision." Id. (quoting Fuller v. Phipps, 67 F.3d 1137, 1142 (4th Cir. 1995)). "[A] plaintiff must demonstrate that a 'protected trait . . . actually played a role in the employer's decisionmaking process and had a determinative influence on the outcome.' " Worden v. SunTrust Banks, Inc., 549 F.3d 334, 342 n.7 (4th Cir. 2008) (quoting Hill, 354 F.3d at 286).

Alternatively, when direct evidence is lacking, a plaintiff may produce circumstantial evidence and proceed under the McDonnell Douglas burden-shifting framework. Warch v. Ohio Casualty Ins. Co., 435 F.3d 510, 520 (4th Cir. 2006); see also McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Pursuant to this framework, once the plaintiff establishes a *prima facie* case of discrimination, the burden shifts to the defendant to produce evidence of a legitimate, nondiscriminatory reason for the adverse action. Merritt v. Old Dominion Freight, 601 F.3d 289, 294 (4th Cir. 2010) (Title VII). The defendant's burden "is a burden of production, not persuasion." Reeves, 530 U.S. at 142. Once a defendant meets this burden by producing affidavits or testimony demonstrating a legitimate, nondiscriminatory reason, "the McDonnell Douglas framework—with its presumptions and burdens—disappear[s], and the sole remaining issue [is] discrimination *vel non*." Id. (internal quotation marks and citations omitted).

In other words, if the defendant meets the burden to demonstrate a legitimate, nondiscriminatory reason, the plaintiff must demonstrate by a preponderance of the evidence that the proffered reason was " 'not its true reason[], but [was] a pretext for discrimination.' " Merritt, 601 F.3d at 294 (quoting Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981)). Accordingly, the plaintiff's burden of demonstrating pretext " 'merges with the ultimate burden of persuading the court that [the plaintiff] has been the victim of intentional discrimination.' " Merritt,

601 F.3d at 294 (quoting Burdine, 450 U.S. at 256) (alterations in original); see also Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 319 (4th Cir. 2005) (Title VII & 42 U.S.C. § 1981). To meet this "merged" burden, the employee may prove by a preponderance of the evidence that the decision maker's affidavit is untrue or that the employer's proffered explanation is unworthy of credence. Burdine, 450 U.S. at 256.

"[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, *may* permit the trier of fact to conclude that the employer unlawfully discriminated." Reeves, 530 U.S. at 148. However, "if the record conclusively reveal[s] some other, nondiscriminatory reason for the employer's decision, or if the plaintiff create[s] only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred," summary judgment is appropriate. Id. Accordingly, the court must evaluate "the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law." Id. at 148-49. "Notwithstanding the intricacies of proof schemes, the core of every [discrimination] case remains the same, necessitating resolution of the ultimate question of . . . whether the plaintiff was the victim of intentional discrimination." Merritt, 601 F.3d at 294-95.

**C.    Addison's Title VII Claims[3]**

**1.    Disparate Treatment**

Addison appears to raise claims of disparate treatment based on his race and gender stemming from the following actions:  (1) his discharge; (2) denial of relocation costs for a transfer; and (3) CMH's differing responses to Lambert's and Addison's complaints about one another.

**a.    Direct Evidence**

Title VII prohibits an employer from "discharg[ing] any individual, or otherwise . . . discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).  Addison's motion for summary judgment and response in opposition to the defendant's motion for summary judgment contend that discriminatory statements allegedly made by Lambert "coupled with [Addison's] formal related complaints and CMH's systematic failure to address them" constitute direct evidence of discriminatory discharge and disparate treatment in this case.  (Pl.'s Mot. Summ. J. at 6, ECF No. 74 at 6; see also  Pl.'s Resp. Opp'n Summ. J. at 14,  ECF No. 78 at 14.)

As an initial matter, the "formal" complaint referenced by Addison constitutes a letter written by him on June 13, 2009.  (Id.; see also Pl.'s Mot. Summ. J. at 3; ECF No. 74-3.)  However, a review of the letter reflects that it makes no reference to any discriminatory actions or language by Lambert. Rather, it complains about a disagreement he had with Lambert, making no reference to any racial

---

[3] To the extent the defendant argues that Addison failed to exhaust his administrative remedies in relation to his disparate treatment, disparate impact, and hostile work environment and harassment claims (Def.'s Mot. Summ. J. at 20; ECF No. 73-1 at 20), the court finds that such claims were sufficiently stated in his initial charge to satisfy the exhaustion requirement.  See Evans v. Technologies Applications & Serv. Co., 80 F.3d 954, 963 (4th Cir. 1996).



epithets or racially offensive conduct.  Thus, this letter fails to provide any direct evidence of discriminatory discharge or disparate treatment.

Further, Lambert's racially derogatory statements during the time she and Addison worked together cannot constitute direct evidence of discriminatory adverse employment actions taken by CMH.   Courts in this circuit have widely recognized that stray comments cannot alone constitute evidence of discrimination unless they are related to the employment decision at issue.  See Brinkley v. Harbour Recreation Club, 180 F.3d 598, 608 (4th Cir. 1999) (Title VII) ("[T]o prove discriminatory animus, the derogatory remark cannot be stray or isolated and unless the remarks upon which plaintiff relies were related to the employment decision in question, they cannot be evidence of discrimination.") (internal quotation marks and alterations omitted), overruled on other grounds by Desert Palace, Inc. v. Costa, 539 U.S. 90 (2003).  Addison presents no evidence that the offensive remarks by his co-worker Lambert had any connection to any allegedly adverse action taken by White, Massarelli, or Booth against Addison.   No evidence connects these comments, reflecting discriminatory animus by his co-worker Lambert, to the actions he complains of that were taken by his supervisors.   Diamond, 416 F.3d at 318 (requiring evidence that the conduct or statements both reflect directly the alleged discriminatory attitude and bear directly on the contested employment decision).  Accordingly, Addison cannot establish disparate treatment based upon his race with direct evidence.

> **b.**     **Circumstantial Evidence**

The elements of a *prima facie* case of discrimination are:  (1) membership in a protected class; (2) adverse employment action; (3) satisfactory job performance;  and (4) different treatment from similarly situated employees outside of the protected class.  See  Coleman v. Maryland Court



of Appeals, 626 F.3d 187, 190 (4th Cir. 2010) (citing White v. BFI Waste Servs., LLC, 375 F.3d 288, 295 (4th Cir. 2004)).

i.       **Transfer**

Addison alleges that he requested a transfer in January of 2010, which the defendant subsequently denied.  (EEOC Charge, ECF No. 68-1 at 2.)  However, "mere refusal to grant a transfer that an employee desires does not qualify as an adverse employment action unless the decision 'had some significant detrimental effect' on the employee."  Wagstaff v. City of Durham, 233 F. Supp. 2d 739, 744 (M.D.N.C. 2002) (quoting Boone v. Goldin, 178 F.3d 253, 256 (4th Cir. 1999)); see also Scott v. Teachers Ins. & Annuity Ass'n of Am., C/A No. 3:12-697-FDW-DCK, 2013 WL 2948315, at *5 (W.D.N.C. June 14, 2013), aff'd, 542 F. App'x 294 (4th Cir. 2013).  A significant detrimental effect "on an employee include[s] reduced pay, a diminished opportunity for promotion, less responsibility, or a lower rank."  Wagstaff, 233 F. Supp. 2d at 744.  In the instant case, Addison fails to provide evidence to demonstrate that his inability to transfer to another CMH location caused any such detrimental effects.  He thus fails to demonstrate that the defendant's failure to approve relocation costs to effect his transfer constitutes an adverse employment action, so he cannot satisfy the second element of the *prima facie* discriminatory discharge test.[4]  Therefore the defendant's motion for summary judgment should be granted as to Addison's claim related to his potential transfer.

---

[4] The third and fourth elements of the *prima facie* test for discriminatory discharge are discussed below.  For the reasons discussed below, Addison's claims associated with his potential transfer also fail to satisfy the third and fourth prongs of that test.



ii.    **Discharge**

Next Addison alleges that he was discharged on April 1, 2010.  Courts use a more specific *prima facie* test in connection with a claim of disparate treatment based upon a discharge.  To establish a *prima facie* case of disparate treatment based on an alleged discriminatory discharge, a plaintiff must first demonstrate that:  (1) he is a member of the protected class; (2) his employment was terminated; (3) at the time of his termination, he was performing at a level that met the employer's legitimate expectations; and (4) his position remained open or was filled by a similarly qualified individual outside the protected class.  See Miles v. Dell, Inc., 429 F.3d 480, 485 (4th Cir. 2006) (quoting Hill v. Lockheed Martin Logistics Mgmt., 354 F.3d 277, 285 (4th Cir. 2004) (*en banc*)); see also St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506 (1993).

The defendant argues that Addison cannot meet the third element of the *prima facie* test because his termination resulted from his "inappropriate behavior" and a "very low" Net Promoter Score ("NPS") which "did not meet CMH's legitimate expectations."  (Def.'s Mot. Summ. J. at 12, ECF No. 73-1 at 12.)  Addison asserts that the defendant has "unfairly presented inaccurate statements about Plaintiff's behavior . . . and unfairly manipulated Plaintiff's NPS scores."  (Pl.'s Mot. Summ. J. at 10, ECF No. 74 at 10.)  In analyzing this element to determine satisfactory job performance, a plaintiff's performance is evaluated at the time of the alleged adverse action and courts have recognized that it is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff.  King v. Rumsfeld, 328 F.3d 145, 149 (4th Cir. 2003) (Title VII) (stating that plaintiff's own testimony of satisfactory job performance cannot establish a genuine issue as to whether he was meeting his employer's expectations in a race discrimination case) (citing Evans, 80 F.3d at 960-61).  An employer's expectations of its employees are considered "legitimate"

PJG

when they are honestly held; whether the employee agrees with those expectations is not the test. Thornley v. Penton Pub., Inc., 104 F.3d 26, 30 (2d Cir. 1997) (stating that "a plaintiff must satisfy the employer's honestly-held expectations"). In this context, the term "legitimate" means that expectations cannot be a "sham designed to hide the employer's discriminatory purpose." Warch, 435 F.3d at 518. As long as the requirements imposed are bona fide expectations, it is not the court's province to determine whether an employer demands too much of its workers. Coco v. Elmwood Care, Inc., 128 F.3d 1177, 1179 (7th Cir. 1997) (Posner, J.).

In regard to workplace behavior, the defendant asserts that Addison failed to meet CMH's expectations by violating CMH's "Inappropriate Behavior Policy." (Ex. H to White Decl. at 25, ECF No. 73-2 at 25.) In support of this argument, the defendant provides declaratory testimony from other employees alleging that Addison inappropriately touched female co-workers (Lambert Decl. at 7, 9, ECF No. 73-3 at 7, 9; Jaco Decl. at 2, ECF No. 96-1 at 3), was verbally abusive, and attempted to intimidate other employees (White Decl. at 5, ECF No. 73-2 at 5; Lambert Decl. at 3, ECF No. 73-3 at 3; Massarelli Decl. at 3, ECF No. 73-4 at 3; Jaco Decl. at 2, 9, ECF No. 96-1 at 3, 9; see also Def.'s Mot. Summ J. at 13, ECF No. 73-1 at 13). While Addison denies most of the defendant's allegations concerning his behavior, he admits to cursing at work. (Addison's Dep. at 207-08, 210, 220, ECF No. 73-9 at 29-30, 32, 35; see also White Decl. at 5, ECF No. 73-2 at 5; Lambert Decl. at 3, ECF No. 73-3 at 3; Massarelli Decl. at 2, ECF No. 73-4 at 2; Jaco Decl. at 4, ECF No. 96-1 at 5.) Addison attributes his use of such language to the work environment. (Addison Dep. at 207-08, ECF No. 73-9 at 29-30.) Addison further admits to a milder version of blocking a co-worker's vehicle in the parking lot (Addison Dep. at 208-10, ECF No. 73-9 at 30-32; see also Lambert Decl. at 4, ECF No. 73-3 at 4; Jaco Decl. at 5, ECF No. 96-1 at 6) and recalls being upset

after refusing to sign a progressive counseling report, possibly yelling at White as the two walked outside after the counseling session (Addison Dep. at 187-88, ECF No. 73-9 at 22-23; White Decl. at 4, ECF No. 73-2 at 4; Lambert Decl. at 3, ECF No. 73-3 at 3; Jaco Decl. at 4, ECF No. 96-1 at 5).

The defendant also asserts that Addison failed to meet CMH's performance expectations. The defendant agrees that Addison performed well in the past, achieving the "Clayton Circle Hall of Fame" recognition for his performance in 2007. (White Decl. at 3-4, ECF No. 73-2 at 3-4.) However, Addison's NPS, which measures customer satisfaction with an employee's services, fell to 33.33% at the end of 2009, resulting in a counseling session with White in January of 2010. (Id.) White states that he informed Addison that the NPS score "must be 60 by the end of the first quarter (March 2010), and must be at or better than CMH's average acceptable score of 62 by the end of the second quarter (June 2010)." (Id.) An NPS report attached to White's Declaration reflects an NPS score of 37.5% for Addison at the time of termination. (White Decl. at 5, 19, ECF No. 73-2 at 5, 19.) While Addison admits to the January 2010 NPS counseling session with White, he maintains that his performance was exemplary and that the NPS scores were unfairly calculated. (Pl.'s Resp. Opp'n Summ. J. at 12, 18, ECF No. 78 at 12, 18.) Specifically, Addison asserts that his NPS score would have been much higher, "between 85 and 90," if comments regarding services beyond his control were deleted from the NPS computation. (Addison Dep. at 186, ECF No. 73-9 at 21; Addison Rev. Aff. at 2, ECF No. 74-1 at 2.) However, Addison concedes that he cannot overlook the fact that, "as a salesperson" he was responsible, "because ultimately you sold the customers the house." (Addison Dep. at 202, ECF No. 73-9 at 24.)

While Addison questions the NPS rating system, nothing in the record shows that White did not genuinely believe Addison's performance to be lacking at the time of his discharge. Moreover,



the defendant provided unrefuted evidence that CMH sales professionals have been evaluated under the standard NPS rating system since 2007 (White Decl. at 3-4, 15, ECF No. 73-2 at 3-4, 15), and Addison provides no evidence from which a reasonable jury could find that the defendant's expectations regarding his NPS ratings were a sham.  Similarly, with the exception of cursing, Addison denies of most of the alleged inappropriate workplace behavior.  However, Addison fails to show that the decision maker, Massarelli, at the time of discharge, questioned the validity of Addison's low NPS scores or the validity of the statements of Addison's five co-workers who echoed that he "cursed too much, was too loud, and created a negative, distracting, and threatening work environment."  (Massarelli Decl. at 3, ECF No. 73-4 at 3.)  In essence, Addison's contention that the NPS scores were unfairly calculated and that the office climate caused him to curse, even if true, do not show that the defendant did not genuinely believe that Addison failed to meet the company's legitimate expectations at the time of discharge.  See Holland v. Washington Homes, Inc., 487 F.3d 208, 217-18 (4th Cir. 2007) (finding that no reasonable juror could conclude the decision maker's reason was pretextual where the plaintiff's evidence "failed to address whether [the decision maker] did not honestly believe that the threats were made"); see also Coco, 128 F.3d at 1179. Further, to the extent Addison asserts that the defendant's failure to follow its own termination policies demonstrates pretext (Pl.'s Mot. Summ. J. at 8, ECF No. 74 at 8), courts have generally recognized that an employer's unfair deviation from its own termination procedures or its failure to adhere to common notions of fairness in the termination process is not probative of discriminatory intent and cannot show pretext.  See, e.g., Duggan v. Sisters of Charity Providence Hospitals, 663 F. Supp. 2d 456, 470 n.6 (D.S.C. 2009) (rejecting plaintiff's attempt to establish pretext by pointing out that the defendant rushed to judgment to terminate him, failed to interview witnesses or the

plaintiff himself, failed to follow its own policy, and failed to consult with the plaintiff's supervisor before deciding to terminate him); see also Randle v. City of Aurora, 69 F.3d 441, 454 (10th Cir. 1995) ("The mere fact that an employer failed to follow its own internal procedures does not necessarily suggest that the employer was motivated by illegal discriminatory intent or that the substantive reasons given by the employer for its employment decision were pretextual."). Thus, Addison has failed to satisfy the third element of the *prima facie* test for discriminatory discharge, that he was performing at a level that met the employer's legitimate expectations.

Addison likewise cannot meet the fourth element of the *prima facie* test by establishing that the defendant subsequently filled the position with someone outside the protected class. The defendant hired a black male, Larry Summers ("Summers") on August 1, 2011. (White Decl. at 7, ECF No. 73-1 at 7.) Because "business was slower and no suitable candidates were found in the interim," Summers was the first hire in any position after Addison's termination. (Id.) Summers resigned shortly thereafter on August 12, 2011. (Id.) Addison claims that Summers's hire was "bogus" (Pl.'s Mot. Summ. J. at 11, ECF No. 74 at 11) and provides an affidavit from Summers alleging that he quit the job because White would not provide training necessary for Summers to talk to customers and sell homes. (Summers Aff. at 1-2, ECF No. 74-10 at 1-2.)[5] Without an opportunity to sell homes, Summers indicated that he could not feed his family and "had no choice but to leave." (Id.) However, Summers's decision to leave CMH to pursue another job opportunity after only twelve days of employment does not show that the defendant's hiring of Summers was "calculated to disguise" an act of discrimination. Miles, 429 F.3d at 488-89 (discussing examples of when an

---

[5] In its response, CMH explains that Summers was not yet permitted to talk directly with customers and make sales because he did not yet have his professional license to do so. (Def.'s Resp. Pl.'s Mot. Summ. J. at 9-10, ECF No. 79 at 9-10; see also Hayes Dep. at 7, ECF No. 73-8 at 7.)



inference of discrimination may be drawn).  In any event, because Addison fails to meet the third

element of the *prima facie* test to demonstrate discriminatory discharge, the defendant's motion for

summary judgment should be granted as to this claim.  Finally, even if Addison's evidence were

found sufficient to establish a *prima facie* case, the court concludes that based on the evidence

presented, no rational fact-finder could conclude that Addison's termination was discriminatory.  See

Reeves, 530 U.S. at 150.

### c.    Lambert's and Addison's Complaints to Management

As noted above, absent direct evidence, the elements of a *prima facie* case of discrimination

are:  (1) membership in a protected class; (2) adverse employment action; (3) satisfactory job

performance; and (4) different treatment from similarly situated employees outside of the protected

class.  See Coleman v. Maryland Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010) (citing White

v. BFI Waste Servs., LLC, 375 F.3d 288, 295 (4th Cir. 2004)).  To establish the required inference

of discrimination, Addison presents a putative comparator, Lambert, a white female allegedly treated

more favorably by the defendant.  (Pl.'s Mot. Summ. J. at 12, ECF No. 74 at 12.)  Specifically,

Addison asserts that the defendant treated Lambert's letter dated March 25, 2010, complaining of

Addison's behavior more favorably than the company treated Addison's letter of June 13, 2009.  (Id.)

Addison further complains that Lambert "received more favorable treatment by not having been

disciplined."  (Id.)

The court agrees with the defendant that Addison cannot establish the third and fourth

components of a *prima facie* case with regard to this claim.  As discussed above, Addison has not

met his burden of establishing satisfactory work performance at the time of discharge; thus, he

cannot satisfy the third element of a *prima facie* disparate treatment claim.  Additionally, Addison



fails to demonstrate the fourth element of the test, that he has been treated less favorably than a similarly situated employee outside the protected class. Generally, to be similarly situated and thus permit a valid comparison, the employees outside the protected class must have dealt with the same decision maker, been subject to the same standards, and engaged in the same conduct without mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it. Mitchell v. Toledo Hosp., 964 F.2d 577, 583 (6th Cir. 1992) (Title VII & ADEA) (defining "similarly situated");[6] see also McGuinness v. Lincoln Hall, 263 F.3d 49, 53-54 (2d Cir. 2001) (emphasizing that an employee must be similarly situated in all material respects); Haywood v. Locke, 387 F. App'x 355, 359 (4th Cir. 2010) (stating that "plaintiffs are required to show that they are similar in all relevant respects to their comparator").

While Addison and Lambert were supervised by White and subject to the same standards, as indicated previously, Addison's letter discussed a disagreement between Addison and Lambert during one incident on June 13, 2009, but made no reference to any discrimination. (ECF No. 74-3.) In contrast, Lambert's March 2010 letter discussed several specific instances of Addison's alleged inappropriate conduct to include sexual language and behavior beginning in March of 2007. (Ex. B to Lambert Decl. at 9, ECF No. 73-3 at 9.) As the letters do not describe comparably serious complaints requiring a comparable response or discipline, Lambert is not a viable comparator for Title VII purposes. Thus, Addison cannot establish the fourth element of the *prima facie* test for

---

[6] The Fourth Circuit has not issued a published case on this point; however, the following unpublished cases have cited with approval the Mitchell decision: Atkins v. Holder, 529 F. App'x 318, 321 (4th Cir. 2013); Forrest v. Transit Mgmt. of Charlotte, Inc., 245 F. App'x 255 (4th Cir. 2007); Heyward v. Monroe, No. 97-2430, 1998 WL 841494, at *2 (4th Cir. Dec. 7, 1998); Edwards v. Newport News Shipbuilding & Dry Dock Co., No. 98-1338, 1998 WL 841567, at *3 (4th Cir. Dec. 7, 1998).



disparate treatment. Therefore, the defendant's motion for summary judgment should be granted as to Addison's disparate treatment claim based on the defendant's responses to his and Lambert's complaints about one another.

Similarly, with regard to Addition's argument that Lambert was not disciplined whereas he was terminated, such a claim would also require him to show that Lambert is a viable comparator, similar in all material respects. See Lightner v. City of Wilmington, 545 F.3d 260, 264-65 (4th Cir. 2008) (holding that, to establish a *prima facie* case of disparate discipline, a plaintiff must show that he engaged in prohibited conduct similar to that of a person of another race, color, sex, religion or national origin and that disciplinary measures enforced against him were more severe that those enforced against the other person). For the same reasons just discussed, Lambert is not a valid comparator for Title VII purposes.

### 3.     Hostile Work Environment

Addison also brings claims alleging that he was subjected to a hostile work environment based on his race and gender. Title VII prohibits creating or allowing a hostile work environment based on race, color, religion, sex, or national origin. See Baqir v. Principi, 434 F.3d 733, 746 n.14 (4th Cir. 2006). Such an environment exists "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or persuasive to alter the conditions of the victim's employment and create an abusive working environment." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (internal quotation marks and citations omitted) (Title VII). However, "[w]orkplaces are not always harmonious locales." E.E.O.C. v. Sunbelt Rentals, Inc., 521 F.3d 306, 315-16 (4th Cir. 2008) (Title VII). Moreover, federal employment statutes are

not "general civility code[s]." Oncale v. Sundower Offshore Servs., Inc., 523 U.S. 75, 80 (1998) (Title VII); Mosby-Grant v. City of Hagerstown, 630 F.3d 326, 335 (4th Cir. 2010) (Title VII).

To make out a hostile work environment claim under federal anti-discrimination laws, a plaintiff must show that (1) he experienced unwelcome harassment; (2) the harassment was based on his race or gender; (3) the harassment was sufficiently severe or pervasive to alter the conditions of his employment and to create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer. Baqir, 434 F.3d at 745-46; see also Pueschel v. Peters, 577 F.3d 558, 564-65 (4th Cir. 2009).

To meet the second element, a plaintiff must show that "but for" one of these protected traits, he would not have been a victim of harassment. See Causey v. Balog, 162 F.3d 795, 801 (4th Cir. 1998) (Title VII & ADEA). The federal anti-discrimination statutes do not protect employees from hostility and abuse from their supervisors unless the objectionable conditions occur because of a protected characteristic. See Graham v. Prince George's Cnty., 191 F. App'x 202, 204 (4th Cir. 2006) (finding the district court did not err in determining that "although [the] facts reflected an unpleasant working environment, they did not support a hostile one based on an unlawful characteristic"); see also Oncale, 523 U.S. at 80; Shirer v. Tri-County Elec. Co-op, Inc., C/A No. 5:07-1156-MBS, 2009 WL 2900767, at *8 (D.S.C. Sept. 9, 2009).

Moreover, in a hostile work environment case, the behavior must rise to the standard of being so "severe" or "pervasive" so as to create an abusive working environment. Harris, 510 U.S. at 21; see also Baqir, 434 F.3d at 746. When analyzing this element, courts examine the totality of the circumstances, considering such factors as the frequency of the discriminatory conduct and its severity; whether it is physically threatening or humiliating or merely constitutes offensive verbal

statements; and whether it unreasonably interferes with an employee's work performance. See Harris, 510 U.S. at 23; Hopkins v. Baltimore Gas & Elec. Co., 77 F.3d 745, 753 (4th Cir. 1996); see also Sunbelt Rentals, Inc., 521 F.3d at 315-16 (stating that complaints that would objectively give rise to bruised or wounded feelings or incidents that are premised on nothing more than rude treatment, callous behavior, or a routine difference of opinion and personality conflict will not satisfy the severe or pervasive standard).

As indicated previously, Addison claims that Lambert made racially derogatory comments on several occasions.[7] (Pl.'s Mot. Summ. J., ECF No. 74 at 3; see also Addison Dep. at 145-47, ECF No. 73-9 at 17-19.)  Viewing the facts in the light most favorable to Addison, Lambert used the term "nigger" seven times, "black monkey" three times, and "stupid black mother-fucker" on one occasion.  (Addison Dep. at 145-47, ECF No. 73-9 at 17-19.)  Although these statements are deplorable, case law establishes that these isolated and sporadic comments, occurring eleven times over a two-year period and which, while verbally offensive, did not involve physically threatening behavior, are insufficient to establish that the alleged harassment meets the requisite objective standard.  See Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998) (stating that "isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment") (internal quotation marks and citations omitted); Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 768 (1998) ("To establish a hostile atmosphere, . . . Plaintiff's must prove more than a few isolated incidents of racial enmity.") (internal quotation marks omitted); Belton v. City of Charlotte, 175 F. App'x 641, 657 (4th Cir. 2006)); cf. E.E.O.C. v. Central Wholesalers, Inc.,

---

[7] The court observes that Lambert's comments such as "this ain't Big E Homes" and references to Addison as "stupid" or an "idiot," even taken as true, cannot be construed to be based on race or gender.



573 F.3d 167, 176 (4th Cir. 2009) (finding alleged gender- and race-based harassment was sufficiently severe or pervasive where co-workers referred to women as "bitches" and a co-worker in a cubicle next to the plaintiff had Playboy items, watched pornography in front of her, had a pornographic screensaver, and placed a screwdriver in a Halloween decoration in a sexual manner and where co-workers used racial epithets, some directed at the plaintiff, and two co-workers "kept blue-colored mop-head dolls in their offices which they had hanging by nooses tied around the dolls' necks") and Spriggs v. Diamond Auto Glass, 242 F.3d 179 (4th Cir. 2001) (holding that supervisor's *constant, even daily*, use of racial epithets was sufficiently severe or pervasive to survive summary judgment) and Smith v. First Union Nat'l Bank, 202 F.3d 234 (4th Cir. 2000) (concluding that "a barrage of threats and gender-based insults" that the plaintiff's supervisor directed at her and that occurred more than thirty times in the first few weeks of the plaintiff's employment was sufficiently severe or pervasive to survive summary judgment).

Moreover, even if Lambert's alleged comments were sufficient to meet the "severe and pervasive" standard, Addison cannot show any basis for imputing liability for his co-worker's alleged abuse to CMH. While an employer may be vicariously liable for the harassment by a supervisor "with immediate (or successively higher) authority over the employee," Howard v. Winter, 446, F.3d 559, 565 (4th Cir. 2006) (citation omitted), the undisputed evidence in this case reflects that Lambert, as a sales representative, "worked under" Addison's management. (Sec. Am. Compl. at 3, ECF No. 68 at 3.) Further, Addison fails to demonstrate that he was subjected to a hostile work environment by White, Massarelli, or Higgins, and provides no allegation that any CMH supervisory employee made race- or gender-based derogatory comments. Instead, Addison testified that no one but Lambert used such language on the lot. (Addison Dep. at 146, ECF No. 73-



9 at 18.)  Additionally, to the extent Addison alleges that CMH supervisory employees allowed Lambert to use inappropriate language in the workplace without taking any action, the undisputed evidence in the record reflects that White took corrective measures by discussing the issue with Lambert on the one occasion when her use of such language was reported to him.  (White Decl. at 8, ECF No. 73-2 at 8.)

As the isolated incidents identified by Addison are insufficient to show that his workplace was permeated with discriminatory intimidation, ridicule and insult that were sufficiently severe or pervasive to alter the conditions of his employment and create an abusive working environment, or that any such incidents may be imputed to CMH, the defendant's motion for summary judgment should be granted as to Addison's hostile work environment claim.  See Harris, 510 U.S. at 23; see also Mosby-Grant, 630 F.3d at 335 ("Title VII does not create a general civility code in the workplace; it only proscribes behavior that is so objectively offensive as to alter the conditions of the victim's employment.") (internal quotation marks and citation omitted).

### 4.    Disparate Impact

A "plaintiff establishes a *prima facie* disparate-impact claim by showing that the employer uses a particular employment practice that causes a disparate impact on one of the protected bases." Lewis v. City of Chicago, 560 U.S. 205, 212 (2010) (internal quotation marks and citation omitted); see also Ricci v. DeStefano, 557 U.S. 557, 577-78 (2009) (discussing requirements to establish a disparate impact claim).  Addison asserts that "statements by Declarants attributable to Defendant concerning Plaintiff's alleged inappropriate behavior and low NPS scores as the 'reasons' for Plaintiff's termination are not factual, job-related, and/or consistent with business necessity."  (Pl.'s Mot. Summ. J. at 15, ECF No. 74 at 15.)  However, Addison has not identified any particular



employment practice by the defendant that caused a disparate impact.  Accordingly, the defendant's summary judgment motion should be granted as to Addison's disparate impact claim on African Americans.

### 5.    Retaliation

Claims of retaliation are also analyzed under the <u>McDonnel Douglas</u> burden-shifting framework.  <u>See</u> <u>Yashenko v. Harrah's NC Casino, Co., LLC</u>, 446 F.3d 541, 550-51 (4th Cir. 2006). Title VII makes it unlawful for an employer to retaliate against an employee for engaging in activity protected by the statute.  <u>See</u> 42 U.S.C. § 2000e-3(a).  The requisite "elements for a *prima facie* case of retaliation under Title VII are:  (1) engagement in a protected activity; (2) adverse employment action; and (3) a causal connection between the protected activity and the employment action." <u>Coleman v. Md. Court of Appeals</u>, 626 F.3d 187, 190 (4th Cir. 2010) (citing <u>Mackey v. Shalala</u>, 360 F.3d 463, 469 (4th Cir. 2004)); <u>see also</u> <u>Ziskie v. Mineta</u>, 547 F.3d 220, 229 (4th Cir. 2008); <u>Holland</u>, 487 F.3d at 218.  The defendant argues that Addison "cannot show that he engaged in a protected activity, that the retaliation was the 'but for' cause of his termination, or that sufficient temporal proximity exists to establish causation."  (Def.'s Mot. Summ. J. at 27, ECF No. 73-1 at 27.)

"Protected activity" under the statute falls into one of two categories:  opposition or participation.  <u>Crawford v. Metro. Gov't of Nashville & Davidson Cnty.</u>, 555 U.S. 271 (2009); <u>Peters v. Jenney</u>, 327 F.3d 307, 320 (4th Cir. 2003) (stating that to establish that a plaintiff engaged in protected opposition activity, she must show that she opposed an unlawful employment practice which she reasonably believed had occurred or was occurring).  To constitute protected activity, a plaintiff must have conveyed to the employer a reasonable belief that the actions complained of violated federal law.  <u>Jordan v. Alternative Res. Corp.</u>, 458 F.3d 332, 340-41 (4th Cir. 2006) (stating



that "an employee seeking protection from retaliation must have an objectively reasonable belief in light of all the circumstances that a Title VII violation has happened or is in progress") (citing Equal Employment Comm'n v. Navy Federal Credit Union, 424 F.3d 397 (4th Cir. 2005)); compare Cordero v. Florida, No. 4:06cv529-SPM/AK, 2007 WL 2972988, at *6 (N.D. Fla. Oct. 9, 2007) (ADA) ("[A]lthough Plaintiff complained generally that [his supervisor] treated him poorly, he never complained about disability harassment. The [employer] cannot be held liable for failing to take prompt remedial action since Plaintiff did not put the [employer] on notice that he was being harassed because of his disability."); with Okoli v. City of Baltimore, 648 F.3d 216, 224 & n.8 (4th Cir. 2011) (Title VII retaliation) (finding that making a complaint of "harassment" and providing a description of the behavior at issue constituted protected activity under Title VII of which the employer should have known even though the complaint did not use "magic words" identifying the same specific trait (gender) protected under Title VII).  Further, "Title VII retaliation claims must be proved according to traditional principles of but-for causation," which "requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer."  Univ. of Tex. Sw. Med. Ctr. v. Nassar, 133 S. Ct. 2517, 2533 (2013).

To prove a causal connection, a plaintiff asserting a retaliation claim must be able to show that her employer took the adverse action " '*because* the plaintiff engaged in a protected activity.' " Holland, 487 F.3d at 218 (emphasis in original) (quoting Dowe v. Total Action Against Poverty in Roanoake Valley, 145 F.3d 653, 657 (4th Cir. 1998)).  Thus, to demonstrate causation, a plaintiff must show that the employer was aware of the protected activity.  See Shield v. Fed. Express Corp., 120 F. App'x 956, 962 (4th Cir. 2005) (citing Luckie v. Ameritech Corp., 389 F.3d 708, 715 (7th Cir. 2004)).  In certain circumstances, temporal proximity between the protected activity and the



adverse action can be probative of a causal connection. See Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 273-74 (2001) (noting that to establish a causal connection based on temporal proximity alone, the time between the employer's knowledge of the protected activity and the adverse employment action must be "very close" and holding a twenty-month period to be insufficient).

Addison asserts that he engaged in protected activities to include his June 2009 letter and January 2010 request for a transfer to another CMH lot. (Pl.'s Mot. Summ. J. at 17, 19, ECF No. 74 at 17, 19.) However, as previously discussed, Addison's June 2009 complaint letter contained no allegations of discrimination and no evidence shows that Addison alerted his employer that his transfer request was based on alleged discriminatory conduct. As Addison has not demonstrated that his June 2009 letter and January 2010 informal transfer discussions constitute protected activity, Jordan, 458 F.3d at 340-41, he fails to meet the second element of the *prima facie* test for retaliation. Moreover, Addison has not offered evidence from which a reasonable jury could find that his termination in April of 2010 was causally connected to the June 2009 letter or January 2010 transfer discussions. See Breeden, 532 U.S. 273-74; Pascual v. Lowe's Home Centers, Inc., 193 F. App'x 229 (4th Cir. 2006) (*per curiam*) (holding that the plaintiff had failed to establish a causal connection by temporal proximity alone when "at least three to four months" separated the claimed protected activities and the termination of the plaintiff's employment). Similarly, to the extent Addison contends that he was terminated for writing the letter and discussing a potential transfer, the defendant presents abundant evidence that Addison's discharge was based on his failure to meet CMH's performance and behavior standards. As such, Addison cannot show that he would not have been fired "but for" his 2009 letter and potential transfer discussions. See Holland, 487 F.3d at 218. Further, even if Addison could establish a *prima facie* case of retaliation, Addison has presented

insufficient evidence to show that these proffered reasons were a pretext for retaliation. See Merritt, 601 F.3d at 294. Therefore, the defendant's motion for summary judgment should be granted as to this claim.

## D.     State Law Claims

### 1.     Violation of South Carolina Public Policy

Addison's second cause of action seeks relief for wrongful discharge in violation of South Carolina public policy, alleging that the defendant terminated him "contrary to the stated code of business conduct and ethics and established policies protecting employees from discrimination and a hostile work environment." (2d Am. Compl. at 8, ECF No. 68 at 8; see also Pl.'s Mot. Summ. J. at 19-21, ECF No. 74 at 19-21.) State law recognizes that a cause of action in tort for wrongful discharge arises where the retaliatory discharge of an at-will employee constitutes violation of a clear mandate of public policy. Ludwick v. This Minute of Carolina, Inc., 337 S.E.2d 213, 216 (S.C. 1985). This public policy exception does not apply, however, when the employee has an existing statutory remedy for the wrongful termination. Barron v. Labor Finders of South Carolina, 713 S.E.2d 634, 615 (S.C. 2011); see also Heyward, 1998 WL 841494 at *4 (finding that South Carolina's public policy exception "has not been extended to circumstances where there is a statutory remedy for employment discrimination."); Dockins v. Ingles Markets, Inc., 413 S.E.2d 18, 19 (S.C. 1992) (finding that employee allegedly terminated in retaliation for filing complaint under Fair Labor Standards Act had existing statutory remedy for wrongful termination). As a statutory remedy, Title VII, exists for Addison's claims of wrongful termination based on race and gender, his public policy claims based on the same allegations are barred as a matter of law. Accordingly, the court



recommends that the defendant's motion for summary judgment be granted as to the Addison's second cause of action.

### 2.     Breach of Employment Agreement

As a third cause of action, Addison alleges breach of an employment agreement based on a Code of Business Conduct and Ethics ("Code"), which employees are allegedly required to read and sign.  (2d Am. Compl. at 9, ECF No. 68 at 9.)   Addison claims that the Code amounts to an agreement, which the defendant breached when it terminated Plaintiff.  (Id.)  However, as pointed out by the defendant (Def.'s Mot. Summ. J. at 30, ECF No. 73-1 at 30), Addison admitted in his deposition testimony that he had no employment contract with the defendant and that he did not believe the Code created such a contract.  (Addison Dep. 97-104, ECF No. 73-9 at 3-9.)  Further, in South Carolina, employment is presumed to be at-will and an employee may be terminated at any time with or without cause for any reason or for no reason.  Hessenthaler v. Tri-County Sister Help, Inc., 616 S.E.2d 694, 697 (S.C. 2005) (finding that employee handbook did not constitute a contract). Addison has failed to show that the Code altered his at-will employee status and "such policies have routinely been held not to, by themselves, constitute a contract."  See Lindquist v. Tanner, C/A No. 2:11-3181-RMG, 2013 WL 4441946, at *10 (D.S.C. Aug. 15, 2013) (collecting cases).  Therefore, the defendant's motion for summary should be granted as to this claim.

### 3.     Negligence/Gross Negligence

In his final cause of action, Addison claims that the defendant failed to properly train and supervise employees or "investigate claims of racial discrimination in a hostile work environment." (2d Am. Compl. at 10, ECF No. 68 at 10.)   However, as argued by the defendant (Def.'s Mot. Summ. J. at 32, ECF No. 73-1 at 32), Addison's negligence/gross negligence claims fail as a matter



of law because his exclusive remedy lies in the South Carolina Workers' Compensation Act.  See S.C. Code Ann. § 42-1-540 ("The rights and remedies granted by [the Workers Compensation Act] . . . shall exclude all other rights and remedies of such employee . . . as against his employer, at common law or otherwise, on account of [personal] injury, loss of service or death."); see also Dickert v. Metropolitan Life Ins. Co., 428 S.E.2d 700, 701 (S.C. 1993) (finding that the plaintiff's intentional infliction of emotional distress and negligence claims against his employer were barred by the Workers' Compensation Act); Lasher v. Day & Zimmerman Int'l, Inc., 516 F. Supp. 2d 565, 587 (D.S.C. 2007) (same).  While the Second Amended Complaint's fourth cause of action does not appear to allege claims of an intentional tort, Addison appears to argue such a claim in his motion for summary judgment.  (Pl.'s Mot. Summ. J. at 29, ECF No. 74 at 29.)  However, to remove a claim from the scope of the Workers' Compensation Act, a plaintiff must show that the alleged bad actor is the alter ego of the employer and Addison presents no evidence to demonstrate that any of the CMH employees discussed in this case constitute an alter ego of the defendant.  Dickert, 428 S.E.2d at 701 (defining "alter ego" as only "dominant corporate owners and officers") (citing Loges v. Mack Trucks, 417 S.E.2d 538 (S.C. 1992) and Stewart v. McLellan's Stores Co., 9 S.E.2d 35 (S.C. 1940)).  As Addison's negligence/gross negligence claims arise from the same factual allegations that support his Title VII claims and he fails to demonstrate that such claims fall into any exception to Workers' Compensation Act exclusivity, the defendant's motion for summary judgment should be granted as to this cause of action.

## RECOMMENDATION

Based on the foregoing, the court recommends that the defendant's motion for summary judgment be granted (ECF No. 73) and the plaintiff's motion for summary judgment be denied (ECF No. 74).

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

August 5, 2014
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.' " Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).